# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-19552-MER |
| PARKER EXCAVATING, INC., ) | |
| A COLORADO CORP. ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | Adversary No. 08-01793-MER |
| PARKER EXCAVATING, INC. ) | |
| ) | Adversary No. 09-01428-MER |
| Plaintiff, ) | |
| ) | **Consolidated Under 08-1793-MER** |
| v. ) | |
| ) | |
| CASTLE ROCK CONSTRUCTION ) | |
| COMPANY OF COLORADO, LLC and ) | |
| SAFECO INSURANCE COMPANY OF ) | |
| AMERICA, INC. ) | |
| ) | Signed/Docketed on |
| Defendants. ) | November 28, 2011 |

## ORDER

THIS MATTER comes before the Court on the following pending matters:

(1) The *Plaintiff's Brief on Interest, Costs, and Attorneys' Fees* filed by Parker Excavating, Inc. ("PEI") (the "Brief"), *Defendants' Response to Plaintiff's Brief on Interest, Costs, and Attorneys' Fees* filed by Castle Rock Construction Company of Colorado, LLC ("CRCC") and Safeco Insurance Company of America, Inc. (the "Response Brief"), and *Plaintiff's Reply to Defendants' Response to Brief on Interest, Costs, and Attorneys' Fees* (the "Reply Brief").

(2) The *Defendants' Motion to Reconsider Order on the Adversarial Proceeding* filed by CRCC and Safeco Insurance Company of America, Inc. (the "Motion to Reconsider"), *Plaintiff's Response to Defendant's Motion to Reconsider Order on the Adversarial Proceeding* filed by PEI (the "Response"), and *Defendant's Reply in Support of the Motion to Reconsider Order on the Adversarial Proceeding* filed by CRCC (the "Reply").

Both PEI's Brief and CRCC's Motion to Reconsider were filed in response to the Order issued by this Court on May 19, 2011 (the "May Order").

In the May Order, this Court concluded as follows:

Based on the Court's conclusions above, PEI has established a breach of contract claim for $854,981.09 on the Alamosa Project and $272,312.52 on the William White Project, or a total of $1,127,293.61. This amount must be reduced by the payments CRCC has made to, or on behalf of, PEI that have not been previously accounted for, including the $84,942.38 discussed above in the "setoff" section. The reduction results in an overall amount awarded in favor of PEI and against CRCC in this proceeding of $1,042,351.23. Accordingly,

IT IS ORDERED, as explained in detail above, the relief sought in the Complaint filed by Parker Excavating, Inc. against Castle Rock Construction Company of Colorado, LLC in 08-01793-MER is GRANTED, in part. Judgment shall enter in favor of Parker Excavating, Inc. and against Castle Rock Construction Company of Colorado, LLC for $854,981.09 on the Alamosa Project and $272,312.52 on the William White Project, less other payments made by CRCC of $84,942.38, for a total damage award of $1,042,351.23.

IT IS FURTHER ORDERED, the remaining relief sought in the Complaint filed by Parker Excavating, Inc. in 08-01793-MER is DENIED.

IT IS FURTHER ORDERED, the counterclaims asserted by Castle Rock Construction Company of Colorado, LLC in 08-01793-MER are DENIED, except for the setoff of the payments included in the above calculation.

IT IS FURTHER ORDERED, as explained in detail above, the relief sought in the Complaint filed by Parker Excavating, Inc. against Safeco Insurance Company of America, Inc. in 09-01428-MER is GRANTED. Judgment shall enter in favor of Parker Excavating, Inc. and against Safeco Insurance Company of America, Inc. for $854,981.09 on the Alamosa Project.

IT IS FURTHER ORDERED, consistent with the Court's requirement above, Parker Excavating, Inc. shall have through and including June 2, 2011, to file a legal brief regarding its request for attorney fees, costs and interest. Castle Rock Construction Company of Colorado, LLC and Safeco Insurance Company of America, Inc. shall have through and including June 16, 2011, to file a response brief.[1]

---

[1] May Order at 61-62 (Docket #90).

## MOTION TO RECONSIDER

### A.  Defendants' Position on the Motion to Reconsider

Defendants ask this Court to reconsider certain findings and conclusions it made regarding the Alamosa Project in its May Order. Specifically, Defendants assert this Court's award of damages to PEI was based in part on erroneous assumptions and flawed computations by PEI's accounting expert, Jack W. Harris, CPA ("Harris"). First, CRCC contends certain change order requests ("CORs") unrelated to dewatering were already paid by CRCC (by force account or contract payments) and should not have been included in Harris's calculation. Second, CRCC asserts Harris's calculation was erroneous because it should not have included additional bond costs that PEI did not incur. Based upon this, Defendants seek a reduction in the award.

### B.  Discussion

#### *1.  Standard for Motion to Reconsider*

Since the Motion to Reconsider was filed more than fourteen days after the entry of the May Order, it must be addressed as a motion for relief from judgment pursuant to FED. R. CIV. P. 60(b), made applicable to this proceeding by FED. R. BANKR. P. 9024.[2] Rule 60(b) provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.[3]

---

[2]  FED. R. BANKR. P. 9023, incorporating FED. R. CIV. P. 59, provides a motion for a new trial must be filed no later than fourteen days after entry of judgment. FED. R. BANKR. P. 9024, incorporating FED. R. CIV. P. 60, permits filing a motion for relief from judgment within a reasonable time, generally one year.

[3]  FED. R. CIV. P. 60(b), made applicable to adversary proceedings by FED. R. BANKR. P. 9024.

CRCC seeks relief under FED. R. CIV. P. 60(b)(1) and (6).  In *Van Skiver v. U.S.*, the Tenth Circuit Court of Appeals addressed a motion under Rule 60(b)(1) and (b)(6) and stated:

> This court has recognized that in some instances relief may be granted under Rule 60(b)(1) on a theory of mistake of law, when, as here, the Rule 60(b) motion is filed before the time to file a notice of appeal has expired. *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1358 (10th Cir. 1985).  However, such relief is available only for obvious errors of law, apparent on the record.  *Alvestad v. Monsanto Co.*, 671 F.2d 908, 912-13 (5th Cir.) (relief under Rule 60(b)(1) limited to "perfunctory correction" of obvious errors of law), *cert. denied*, 459 U.S. 1070, 103 S.Ct. 489, 74 L.Ed.2d 632 (1982); *see also Rocky Mountain Tool & Mach. Co. v. Tecon Corp.*, 371 F.2d 589, 596-97 (10th Cir. 1966) ("palpably erroneous award" of interest from date of filing counterclaim rather than from date of entry of judgment correctable under Rule 60(b)(1)).
> . . . .
> Rule 60(b)(6) has been described by this court as a "'grand reservoir of equitable power to do justice in a particular case.'"  *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc) (quoting *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2nd Cir. 1963)), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976).  The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by *Pierce*.  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  *Pierce*, 518 F.2d at 723.  However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958).  In this case, plaintiffs' motion did not articulate any circumstances even remotely similar to *Pierce*, or any other unusual circumstances that would entitle them to relief under Rule 60(b)(6).[4]

As recognized by the United States District Court for the District of Kansas in *Butler v. Boeing Co.*, "The Court has discretion whether to grant or deny a motion to reconsider;" however,

> [a] motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed. *See Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D. Kan. 1994).  Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been

---

[4] *Van Skiver v. U.S.*, 952 F.2d 1241, 1244-1245 (10th Cir. 1991).  *See also State Bank of S. Utah v. Gledhill* (*In re Gledhill*), 76 F.3d 1070 (10th Cir. 1996).

presented originally. *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).[5]

*2. Change Order Requests*

Defendants contend the documentary evidence and testimony presented at trial established CRCC had already compensated PEI for work PEI claimed in CORs 1- 36, but that Harris's calculation did not properly take this evidence into account.

As the Court stated in its May Order, under the Modified Total Cost Method, it was PEI's burden to establish the amount owed on the Alamosa Project by showing it performed additional or unanticipated work and by providing the Court with evidence establishing the cost of such work.[6] Harris did this in his report, including in his calculation the costs of the work identified in CORs 1-36, but reducing the total amount of change order requests for *all* CORs (CORs 1-40) from $1,494,967.70 by $729,198.70,[7] to reach a total amount of additional field cost damages of $769,695. To that, he added overhead of 15% (which the Court reduced to 10%), along with an additional bond cost at 1.5% to arrive at a total damages figure. The burden then shifted to CRCC to establish it had already paid for some of the additional work that had been performed.

In support of their contention CRCC paid PEI for amounts included in Harris's damages calculation, Defendants point to CORs 1-40 (Pl.'s Exs. 34-74); copies of CRCC's force account billings to CDOT (Def.'s Ex. DP); force account billing forms completed by CDOT (Def.'s Ex. DV); a fax sent by Greg Nejezchleb of CRCC to Dennis Howard of PEI regarding amounts requested by PEI for additional work and amounts requested by CRCC from CDOT (Ex. X); a copy of CRCC's subcontract billing for PEI (Def.'s Ex. FJ); a letter from Carl Umali of CDOT to Mr. Nejezchleb (Def.'s Ex. BI); Harris's analysis of value of additional materials purchased

---

[5] *Butler v. Boeing Co.*, 175 F.Supp. 2d 1307, 1308-1309 (D. Kan. 2001). *See also F.D.I.C. v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) ("Rule 60(b) is 'not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument.' *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996)."). *See also Yapp v. Excel Corp.*, 186 F.3d 1222,1231 (10th Cir. 1999)(citations omitted) ("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order. Excusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party. Rather, the kinds of mistakes remediable under a Rule 60(b)(1) motion are litigation mistakes that a party could not have protected against, such as counsel acting without authority. Thus, a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes.").

[6] May Order at 47.

[7] This figure takes into account COR 36, which was reduced by $12,300, COR 39, which was reduced by $7,030.71, and COR 40, which was reduced by $677,507.17.

(Pl.'s Ex. 142 at 13); and William McConnell's Rebuttal Report (Def.'s Ex. ES); and the testimony of various witnesses. Despite Defendant's contention, this evidence did not establish at trial that CRCC had already paid PEI for work done.

First, as discussed above, Harris's total additional field cost damages figure of $769,695 *did* take into account amounts PEI agreed to withdraw or reduce, as well as amounts "paid for by bid."[8] Second, the exhibits cited by Defendants do not establish CRCC has already paid PEI for any CORs for which CRCC was responsible.[9] For example, in Exhibit BI, a letter to Mr. Nejezchleb from Carlito Amali, the Project Engineer for CDOT, Mr. Amali explains certain CORs were paid as bid items. Implicit in this letter is CDOT's assertion it had already paid for the work done by PEI because the CORs were included in CRCC's bid; payment for work that PEI did in relation to the CORs, therefore, was the responsibility of CRCC. As discussed at length in the Court's May Order, much of the work PEI did for CRCC was outside the scope of the Alamosa Subcontract, but within the scope of CDOT's contract with CRCC. CDOT's refusal to pay additional funds for work included in CRCC's bid, therefore, does not indicate no payment was owed to PEI for work performed, nor that CRCC already paid PEI for such work, nor that CRCC already made payment to PEI, nor that PEI is not entitled to payment for work it performed with CRCC's authorization.

Neither does exhibit DP establish payment was made by CRCC to PEI. According to Mr. Nejezchleb, Exhibit DP consists of copies of force account billings.[10] CRCC contended at trial that a number of these force account billings were not treated as pay items by CDOT, and, therefore, were not payable to PEI. Again, however, CDOT's determination that work billed by PEI was required by CRCC's contract with CDOT is not a determination that CRCC was not, therefore, obligated to pay PEI for the work. As the Court found, a number of the tasks PEI performed with CRCC's authorization benefitted CRCC by making it possible for CRCC to fulfill its contractual obligations to CDOT. Whether CDOT paid CRCC has no bearing on whether PEI is entitled to damages. Thus, the force account billings do not show CRCC paid anything to PEI.

Exhibit DV and the related testimony also do not establish payment to PEI. Mr. Nejezchleb testified Exhibit DV was comprised of force account billings completed by CDOT. He said they would include, from PEI's perspective, "the information on what had been

---

[8] *See* Ex. 142 at 11, in which Harris's calculation excludes amounts for CORs that were paid-for-by-bid.

[9] CDOT was responsible for paying CRCC for all CORs reflecting work done by CRCC, or its subcontractors (including PEI) unanticipated or outside the scope of CDOT's contract with CRCC. CRCC, in turn, was responsible for paying for all work CRCC authorized PEI to do on the Alamosa Project, including dewatering, whether inside or outside the scope of the CRCC-CDOT contract.

[10] *See*, *generally*, Sept. 30 Tr. at 169-177 for discussion of how force account billing were tracked.

approved or not been approved by way of force account work" performed by PEI.[11] Mr. Nejezchleb made notations on the bottoms of these sheets indicating he "posted [the information] to the subanalysis in March of 2008."[12] By "subanalysis," Mr. Nejezchleb was referring to Exhibit DX, a spreadsheet on which CRCC tracked subcontractor payments. According to Mr. Nejezchleb, Exhibit DX "include[s] the back charges or deductive change orders to [PEI] on the Alamosa project."[13] However, the numbers in Exhibit DV do not correspond with the numbers in Exhibit DX. For example, on the first page of Exhibit DV, it indicates "Billing from Sub Contractor" in the amount of $4,656.96 and "Loading per 109.04 to Sub" in the amount of $282.85 for a total of $4,939.81. These dollar figures do not appear anywhere in Exhibit DX. Similarly, page 4 of Exhibit DV, indicates "Billing from Sub Contractor" in the amount of $1,168.26, and "Loading per 109.04 to Sub" in the amount of $108.41 for a total of $1,276,68. Again, none of these figures appears in Exhibit DX, and how exactly this evidence demonstrated these amounts were paid is unclear. Similarly, Exhibit X is a fax, the last page of which identifies the CORs submitted by PEI and the amount of PEI's request. The page included notations of whether these were pay items, including notations as to whether CDOT declined to pay for CORs. Nothing on this page indicates whether, in light of this information, any amount was paid to PEI.

Indeed, CRCC has produced no ledgers, invoices, statements, or checks showing *payment* to PEI. Its evidence indicates certain amounts related to PEI's work were requested and sometimes the requests were rejected by CDOT. It does not show payment. Therefore, CRCC failed to meet its burden at trial, and the Court concludes there is no error providing a basis for reconsideration under Rule 60(b).

   *3. Bond Costs*

CRCC further asserts PEI failed to provide evidence in support of the bond costs Harris added into his computation of damages. However, as PEI noted, under the Alamosa Subcontract, it is entitled to 2% for bonding.[14] Since Harris's computation employs a 1.5% figure, which is less than the amount to which PEI was contractually entitled, there was no error in the Court's adoption of this amount in its damages determination.[15]

---

[11] Sept. 30, 2010 Tr. at 176:1-4.

[12] Sept. 30, 2010 Tr. at 176:14-15.

[13] Sept. 30, 2010 Tr. at 59:4-6.

[14] Ex. 10 at 2.

[15] Harris found that 1.5% was reasonable. *See* Ex. 142 at 4.

*4.   Profit*

CRCC argues the Court failed to account for reductions to which PEI agreed in CORs 37, 38, and 40, before applying a 10% profit rate. As discussed above, however, Harris properly accounted for the reductions to which PEI agreed when he reduced the total amount of $1,494,967.70 in CORs 1-40 by $729,198.70.[16] Further, Exhibit 142 (exhibit 1 thereto) demonstrates Harris applied his 15% profit factor on the additional field cost damages only after excluding CORs 37, 38, and 40 from the calculation of additional field cost damages set forth in Exhibit 142 (exhibit 4 thereto).[14] The Court reduced this to 10% in its calculation, applying that factor to Harris's additional field cost damages post-exclusion of CORs 37, 38, and 40. Profit damages were thus properly calculated.

*5.   Breadth of Mr. Harris's Calculation*

CRCC argues Harris's damages calculation is overbroad. Specifically, CRCC contends the $244,011 "Piping & Other" component of Harris's estimated "Material Overrun due to Quantity Increases," should be excluded from the damages calculation because the record contains no support for the necessity of these costs as part of dewatering, and because those costs were not supported or differentiated from costs already paid to PEI.

However, the Court finds Harris's calculation made all proper reductions for force work billed by PEI that was not properly compensable. As for CRCC's contention that Harris did not support his inclusion of costs for "Piping & Other Component," when asked to explain how he calculated materials costs, Harris testified:

> [O]n Exhibit 5, I calculated material costs on quantity increases of $334,814. What I did is I was mindful in reviewing all of the costs for other reasons that the labor and material may have increased and concluded that it was the out-of-scope and dewatering that caused the increase.
>
> A:  I reviewed the cost report and the cost report supports these amounts as being assigned to the out-of-scope and dewatering work.
>
> Q: And that information is set out in Exhibit 6?
>
> A: The materials is in Exhibit 5, the labor is in Exhibit 6.
>
> Q: Okay. With regard to Exhibit 5, then, can you explain how you went about calculating the value of additional materials purchased?

---

[16] *See* May Order at 54 n.274.

[14] Ex. 142 at 8, 11-12.

> A: Yes. Referring to Exhibit 5, the first line item or row is the actual purchases of material which is out of their cost report, less the original estimate of material purchased which is from their original estimate. Then I backed out the material claimed in the change orders, the 1through 36, and 39 change orders, and that gave me a number of $334,814. From there, I went to the cost records to verify the character of the type of material purchased and concluded that this was material that related to the out-of scope work and additional piping, the additional materials procured.
>
> Q: Why did you back out additional materials claimed in the other change orders?
>
> A: They were already claimed. I didn't want to double dip.[15]

Further, when Harris was asked to explain in detail what investigation he had made to verify PEI's costs were related to out-of-scope dewatering, Harris described documents he reviewed and interviews he conducted in support of his calculation,[16] all of which are proper for an expert.[17]

CRCC did not cross-examine Harris about his process, nor about the documents he reviewed, nor about his calculation. Instead, CRCC relied on its own witness, William J. McConnell, to rebut the testimony. In his testimony, Mr. McConnell disputed piping was related to the dewatering process. Further, he stated he was "at a loss" as to how Harris calculated his materials costs.[18] However, McConnell did not provide any specific substantive evidence regarding the proper amount of materials costs for the work performed by PEI, nor evidence as to why any of the materials Harris concluded were properly charged to CRCC should be excluded from the damages calculation. McConnell simply felt much of the work done by PEI was not, in fact, out-of-scope, and therefore, was not compensable. In this Court's view, CRCC failed demonstrate Harris's opinion rested on other than a solid foundation. Accordingly, the Court finds its conclusions regarding PEI's damages were not in error.

---

[15] Sept. 29, 2010 Tr. at 28:23-20:2.

[16] Sept. 29, 2010 Tr. at 22:22-23:14.

[17] *See* FED. R. EVID. 703 (expert opinion is admissible if based on facts or data of a type reasonably relied upon by experts in that particular field).

[18] Oct. 1, 2010 Tr. at 156:6-22.

### C.     Conclusion Regarding Motion to Reconsider

For the reasons discussed above, the Court finds CRCC has failed to demonstrate that it is entitled to relief under FED. R. CIV. P. 60(b). The Motion to Reconsider is, therefore, denied.

## ATTORNEY FEES, COSTS AND INTEREST

PEI requests prejudgment interest, postjudgment interest and costs for both the Alamosa Project and the William White Project.[19] PEI is not seeking an award of attorney fees.

### A.     Interest

PEI bases its request for prejudgment interest upon the application of Colorado law, including COLO. REV. STAT. § 5-12-102, which provides for statutory interest at the rate of 8% per annum compounded annually (when there is no agreement as to the rate and the rate is not specified in a contract) and COLO. REV. STAT. § 24-91-103, which provides for interest at the rate of 15% where a contractor is paid on a project by a public entity, but fails to pay its subcontractors within seven days.

1.    *Damages Amount*

In the Court's May Order, it concluded PEI had established a breach of contract claim for $854,981.09 on the Alamosa Project and $272,312.52 on the William White Project, for a total of $1,127,293.61. The Court also concluded, however, the total amount must be reduced by payments that CRCC made to, or on behalf of PEI not previously accounted for, including the amounts discussed in the setoff section of the May Order.[20] In that section, the Court noted such payments included $43,505.91 to Dana Kepner, for the William White Project; $20,000 to Grand Junction Pipe, for the Alamosa and William White Projects; and $5,001.72 and $16,433.75 to Colorado Gravel Products for the Alamosa Project. Based on its review of the trial transcript, the Court has determined this was in error. Specifically, CRCC did pay $43,505.81 to Dana Kepner for the William White Project. It also paid $5,001.72 and $16,433.75 to Colorado Gravel Products for the Alamosa Project. However, the $20,000 CRCC paid to Grand Junction Pipe was paid in connection with the Alamosa Project only – not the William White Project.[20] Accordingly, the Court finds the damages on the Alamosa Project should be reduced by

---

[19] Unless stated otherwise, capitalized terms shall have the same meaning as that defined and used in the May Order.

[20] May 19, 2011 Ord. at 59, 61.

[20] *See* Bell testimony, Oct. 1 Tr. at 21:13-22:6.

$41,435.47,[21] for a total of $814,545.62, and the damages on the William White project should be reduced by $43,505.81, for a total of $228,806.71. The Court therefore will calculate interest on the basis of those figures.

      2.    *Alamosa Project*

PEI requests the Court award prejudgment interest of $244,173.23 and postjudgment interest at the rate of 8% per annum for the Alamosa Project. CRCC does not challenge PEI's calculation and entitlement to prejudgment and postjudgment interest at the rate of 8% per annum, for 1,303 days, on the amounts owed for the Alamosa Project until paid.[22] However, the Court has reviewed PEI's calculation, and finds it is incorrect for a number of reasons.

First, PEI's calculation is based on the statements in the Court's May Order suggesting amounts paid to PEI, or on its behalf, should reduce the amount of PEI's damages on the William White Project. As discussed above, this was error, and the total amount of PEI's damages for the Alamosa Project must also be reduced to account for amounts paid to Colorado Gravel Products and Grand Junction Pipe. Accordingly, damages for the Alamosa Project total $814,545.62.

Second, although PEI properly asserts it is entitled to prejudgment interest pursuant to COLO. REV. STAT. § 5-12-102, PEI fails to note the statute provides for "eight percent interest compounded annually." Its calculation therefore, fails to compound the interest.

As PEI states, and CRCC concedes in its response, PEI is entitled to interest for the 1,303 days that CRCC wrongly withheld the amounts PEI was owed.[23] That means it is entitled to interest, compounded annually for three years, on the $814,545.62, plus 207 days of simple interest.[24] Three years of principal plus interest, compounded annually, on that amount is calculated as follows: $814,545.62 x 1.08 x 1.08 x 1.08 = $1,026,092.89. Total interest for the three-year period, therefore, is $211,547.27.[25] Further, simple interest for the 207 days thereafter is calculated as follows: 207/365 x .08 x $1,026,092.89 = $46,553.69. Total prejudgment interest owed on the $814,545.62, then, is $258,100.96.[26]

---

    [21] $20,000 plus $5,001.72 plus $16,433.75.

    [22] Response Brief, p. 1 ("I. Introduction").

    [23] *See* Pl. Brief on Interest, Costs, & Attorneys' Fees at 4.

    [24] 1,303 days is 3 years and 207 days, taking into account the fact that there were 366 days in 2008.

    [25] $1,026,092.89 less $814,545.62 equals $211,547.27.

    [26] $211,547.27 plus $46,553.69.

3.   *William White Project*

   a.   Effect of Placing Funds in Interest-Bearing Interest Account

On October 8, 2008, in its bankruptcy case, PEI filed a verified statement of claim for $343,000 for work done on the William White Project. In response to the statement of claim, Daniel C. Kogovsek, an attorney for Pueblo County, sent PEI a letter dated November 7, 2008, indicating the County had withheld $5,074 related to the Lime Road Project and $324,612.15 related to the William White Project. Thereafter, PEI and the County entered into their *Stipulation With Pueblo County*, which states:

> (1) [T]here is a dispute between the Debtor and CRCC regarding the amounts due to the Debtor on the Lime Road and William White Boulevard projects;
>
> (2) Pueblo County sent a letter dated November 8, 2008 to the Debtor and CRCC requesting an Order from the Bankruptcy Court directing disbursement of the County Funds;
>
> (3) Pueblo County has expressed an interest in disbursing the County Funds and closing out both jobs; and
>
> (4) [T]he disputes between the Debtor and CRCC may not be resolved for many months and the disbursement will allow Pueblo County to close its files.[27]

The Stipulation further provides:

> Within ten days of the Bankruptcy Court's order approving this Stipulation, Pueblo County shall disburse the County Funds to Debtor's counsel, Kutner Miller Brinen, P.C. in a segregated interest bearing account. The County funds shall not be disturbed or distributed to or by any party until the Bankruptcy Court issues and [sic] order allowing for such disbursement.[28]

PEI filed a *Motion to Approve Stipulation Between Debtor and Pueblo County* on February 6, 2009. The Motion to Approve stated, "CRCC will not suffer any prejudice because the Funds will remain in the account until further order from this Court." CRCC did not object to the Motion, and PEI filed a certificate of non-contested matter in regard to the Stipulation on March 12, 2009, along with an Agreed Order Approving Stipulation Between Debtor and Pueblo County ("Agreed Order"). The Court entered the Agreed Order on March 16, 2009, granting the

---

[27] Pl.'s Reply to Def.'s Response to Brief on Interest, Costs, and Attorneys' Fees, Ex. 1 at 1-2.

[28] *Id.*, Ex. 1 at 2 ¶ 2.

Page 12 of 17

Motion and approving the Stipulation described in the Motion. [29] The Court further ordered, in part:

> 3. Pueblo County is authorized and ordered to transfer the Funds (as defined in the Motion) to a segregated interest bearing account ("Trust Account") created and maintained by Kutner Miller Brinen, P.C. ("Kutner Firm");
>
> 4. The Kutner Firm shall provide a monthly bank statement for the Trust Account to counsel for Castle Rock Construction Company, Inc. ("CRCC"). The Funds shall be held in trust by the Kutner Firm for the benefit of Debtor and CRCC and shall not be considered property of Debtor's estate.
>
> 5. The Funds shall not be disbursed by the Kutner Firm without further Order from this Court (the "Final Disbursement Order(s)") either in the main Chapter 11 Bankruptcy case or the pending adversary proceeding between Debtor and CRCC, captioned as Adversary No. 08-1793 (the "Adversary Proceeding"). The Final Disbursement Order shall provide instructions for disbursement of the Funds. The Kutner Firm shall not disburse any Funds unless pursuant to a Final Disbursement Order . . . .[30]

CRCC asserts since PEI has maintained, in an interest-bearing escrow account, the full amount of its verified statement of claim on the William White Project (which includes both the $187,370.14 the Court has determined is owed to PEI on the project *and* $137,242.01 that belongs to CRCC – plus the interest accrued on the account), it is not entitled to statutory interest. Indeed, CRCC asserts, because PEI's statement of claim on the William White Project was excessive[31] and led to CRCC's funds being withheld from it, PEI should be required to pay interest to CRCC on the $137,242.01 that belongs to CRCC. It states, "[t]he provisions of [COLO. REV. STAT.] § 5-12-102 apply equally to amounts Plaintiff has withheld from CRCC as to those amounts due to [PEI] following judgment in the [adversary] proceeding."[32]

---

[29] Bankr. Case No. 08-19552 (docket #344).

[30] *Id.*

[31] The Court has already found that PEI's statement of claim in this case was not excessive. This finding is not affected by the Court's conclusions regarding the "setoffs" to damages awards on the William White and Alamosa Projects, as there is no evidence that PEI knew of the "setoff" payments made on its behalf prior to filing its statement of claim.

[32] Def.'s Response to Pl.'s Brief on Iinterest, Costs, and Attorneys' Fees at 4.

The Colorado Court of Appeals has noted, "[i]nterest on judgments accrues only by virtue of statute."[33] COLO. REV. STAT. § 5-12-102 allows a judgment creditor to collect interest at the rate of eight percent per annum compounded annually where there is no agreement concerning the rate of interest.[34] Similarly, COLO. REV. STAT. § 24-91-103 provides,

> If the contractor fails to make timely payments to the subcontractor as required by this section, the contractor shall pay the subcontractor interest as specified by contract or at the rate of fifteen percent per annum whichever is higher, on the amount of the payment which was not made in a timely manner. The interest shall accrue for the period from the required payment date to the date on which payment is made.[35]

Parties may voluntarily agree to an amount or rate of interest, as long as the rate is not usurious.[36] Here, CRCC contends PEI, by stipulating to placing the disputed funds into an escrow account, agreed to forego its right to statutory interest and, instead, to receive interest at the rate paid on the escrow account. The Court does not agree the Stipulation constitutes an agreement to this effect. Instead, the Stipulation and Order merely establish the funds are to sit, unused, in an interest-bearing account until the adversary proceeding is determined. Nowhere in the Stipulation do the parties indicate an intention PEI will forego statutory interest.[37] Further, CRCC cites no authority in support of its contention that it too is entitled to prejudgment interest, and the Court sees no basis for this argument. COLO. REV. STAT. § 5-12-102 provides interest for a "judgment creditor," and COLO. REV. STAT. § 24-91-103 provides interest for a "subcontractor." In this case, the only judgment creditor/subcontractor is PEI; therefore, only PEI is entitled to prejudgment interest.

### 2. Calculation of Pre-Judgment Interest

On November 28, 2007, PEI invoiced CRCC for all amounts owed as part of the William White Project. As discussed above, after payments made to PEI and on PEI's behalf, on the date it received payment from Pueblo County, October 14, 2008, CRCC still owed PEI $228,806.71 for work done on the William White Project. PEI, therefore, is entitled to interest

---

[33] *Rios v. Mireles*, 937 P.2d 840, 845 (Colo. Ct. App. 1997).

[34] COLO. REV. STAT. § 5-12-102(2).

[35] COLO. REV. STAT. § 24-91-103(2).

[36] *Rios*, 937 P.2d at 840(citations omitted).

[37] CRCC's argument that PEI's "possession and control" of the full amounts withheld from CRCC make an award of prejudgment interest unjust holds no water. Though PEI's counsel had putative control of the account, it could not, absent Court order, use the funds for any purpose. PEI, therefore, did not really control the account in the sense of being able to use the funds at will for its own purposes.

on the $228,806.71 for the 298-day period from December 28, 2007,[38] to October 21, 2008,[39] pursuant to COLO. REV. STAT. § 5-12-102. It is also entitled to interest on the $228,806 for the period from October 21, 2008, through May 19, 2011, which is 940 days,[40] pursuant to COLO. REV. STAT. § 24-91-103.

The calculation of pre-judgment interest under COLO. REV. STAT. § 5-12-102, therefore is 298 days x .08/365 days x $228,806.71 = $14,944.53.

Under COLO. REV. STAT. § 24-91-103, PEI is entitled to 940 days of prejudgment interest at the rate of 15% for the period commencing October 21, 2008.[41] That calculation is:

940 days x .15/365 days x 228,806.71 = $88,388.35. Total prejudgment interest owed for the William White Project, then, is $14,944.53 + $88,388.35, or $103,332.88.

### 3. Interest in Escrow Account

CRCC also contends it is entitled to a 42% share of the interest that has accrued in the escrow account. PEI concedes this point, but calculates CRCC's share of the interest to be 41.71%. The difference is small, but the Court agrees CRCC is entitled to a 41.71% share of the total interest.

### 4. Post-Judgment Interest

PEI seeks an award of post-judgment interest. CRCC disputes PEI's right to post-judgment interest, arguing PEI has no right to such payment because it already controls the entirety of amounts it is due. Again, as discussed above, though PEI's counsel is custodian of the escrowed funds, PEI will not have effective control or possession of such funds until the Court enters an Order regarding disbursement of the funds. Therefore, post judgment interest is

---

[38] As discussed in the Court's May Order, the "Pay if Paid" provisions do not apply in this circumstances. However, the Court finds CRCC should have a reasonable time to pay for work done, and a reasonable time for payment is 30 days after the invoice date. Therefore, the Court concludes the date on which "money or property has been wrongfully withheld" under COLO. REV. STAT. § 5-12-102 is December 28, 2007, and pre-judgment interest should be calculated as of that date.

[39] *See* Note 38, *infra*.

[40] PEI contends that it is entitled to interest for 947 days; however, COLO. REV. STAT. § 24-91-103(2) provides for a seven-day grace period following receipt of funds from a public entity before such funds must be disbursed. The statutory period under COLO. REV. STAT. § 24-91-103(2) was not triggered, therefore until October 21, 2008. However, the statutory period under COLO. REV. STAT. § 5-12-102 lasts October 21, 2008.

[41] Penalty interest on an award under COLO. REV. STAT. § 24-91-103 is not to be compounded annually. *New Design Constr. Co., Inc. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1184 (Colo. Ct. App. 2008).

appropriate. A judgment will enter consistent with this Order which will constitute the final judgment in this case for interest calculation purposes.[42]

**B.     Costs**

Based on FED. R. BANKR. P. 7054[43] and 28 U.S.C. § 1920,[44] and its position as the "prevailing party," PEI requests that the Court award it costs of $22,928.81. CRCC does not challenge PEI's request for costs,[45] and the Court finds the request is proper. Accordingly, the Court grants PEI's request for an award of costs in the amount of $22,928.81.

**C.     Attorney Fees**

PEI does not assert any entitlement to attorney fees in this action. No fees shall be awarded.

---

[42] See May Order, p. 62, indicating a final judgment will enter in this case following the calculation of attorney fees, costs and interest.

[43] FED. R. BANKR. P. 7054 provides:

(a) Judgments

Rule 54(a)-(c) F.R.Civ.P. applies in adversary proceedings.

(b) Costs

The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. Costs against the United States, its officers and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.

[44] 28 U.S.C. § 1920, taxation of costs, provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

[45] Response Brief, p. 2 ("I. Introduction").

## CONCLUSION

On the basis of the foregoing,

IT IS ORDERED the *Defendants' Motion to Reconsider Order on the Adversarial Proceeding* filed by Castle Rock Construction Company of Colorado, LLC and Safeco Insurance Company of America, Inc. is DENIED.

IT IS FURTHER ORDERED Plaintiff Parker Excavating, Inc., shall be awarded $814,545.62 in damages on the Alamosa Project, plus $258,100.96 in prejudgment interest, with postjudgment interest accruing from May 19, 2011, at the rate of eight percent, compounded annually pursuant to COLO. REV. STAT. § 5-12-102.

IT IS FURTHER ORDERED Plaintiff Parker Excavating, Inc., shall be awarded $228,806.71 in damages on the William White Project, plus $103,332.88 in prejudgment interest, with postjudgment interest accruing from May 19, 2011, at the rate of fifteen percent pursuant to COLO. REV. STAT. § 24-91-103.

IT IS FURTHER ORDERED Plaintiff Parker Excavating, Inc. shall be awarded costs in the amount of $22,928.81.

Dated: November 28, 2011

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge